COURT OF APPEALS OF VIRGINIA

Present:  Judges Russell, Lorish and Senior Judge Annunziata
Argued by videoconference


WILLIAM J. GULLEY

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0714-21-4                        JUDGE LISA M. LORISH
                                                    FEBRUARY 15, 2022

JENNIFER R. BRINKLEY, F/K/A
 JENNIFER R. GULLEY


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Richard E. Gardiner, Judge

          Susan M. Hicks (Rachel N. Hott; Hicks Crandall Juhl, P.C., on
          brief), for appellant.

          Alex H. Xanttopoulos (Cambridge L. Baker; Roop Xanttopoulos
          Babounakis PLLC, on brief), for appellee.


        William J. Gulley ("father") petitioned the circuit court to change the custody agreement

he had with Jennifer R. Brinkley ("mother"). The court held a trial on father's petition and

granted mother's motion to strike, denying the father's request to relocate. The court found that

father failed to meet the threshold of proving a material change in circumstances to allow for

reconsideration of the existing agreement, but also that even if he had, it was not in the best

interests of the children to disrupt the original arrangement. This appeal follows.

        Father first argues the court erred by not considering the evidence in the light most

favorable to him at the motion to strike stage of the trial, and therefore applied the wrong legal

standard. But he procedurally defaulted this argument by failing to make it in front of the circuit

court. The core of father's argument is that the court erred by holding that "a temporary

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

agreement to relocate cannot create a *prima facie* material change in circumstance." The temporary modification here was the parties' agreement that father take the children to live with him and his parents in Chesterfield County during the COVID-19 pandemic. This Court has never articulated a precise test for whether a material change has occurred, and for good reason. The standard is necessarily broad and fact-intensive. For the reasons below, we find no error in the court's conclusion that—on these particular facts—the temporary agreed change in custody did not rise to a material change in circumstances.

Because we affirm on this ground, we do not consider father's assignment of error that the proposed new arrangement was not in the best interests of the children. Finally, we find no error with the partial award of attorney fees in this case.

BACKGROUND

Father and mother finalized their divorce in December 2019. The final divorce order incorporated their marital settlement agreement, which provided for joint legal custody of their two children (then four and six years old) and shared equal physical custody using a 2-3-2-day rotating schedule. Then, everyone lived in Northern Virginia, about five to ten minutes apart. Northern Virginia is where the children were born and had spent their entire lives. Both parents worked full-time and required daycare/preschool for the children. In March 2020, when the children's schools announced a two-week closure because of the worsening pandemic, father proposed by text that he temporarily take the children with him to Chesterfield County, where he would work remotely and live with his elderly parents who could care for the children. Mother agreed.

A few days after arriving at his parents' home, father emailed mother expecting that "schools will be closed for much longer than 2 weeks" and suggesting that there was "a minimal chance that we can sustain careers even having children 50% of the time during the week."

- 2 -

Given his "mother's own personal experience of 35 years as a kindergarten teacher" and the access there "to a huge yard, big wheels, multiple parks within walking distance that minimal to no one ever frequent[s], etc.," father proposed that the children stay with him there "in the short term" and "until this is 'over.'" He also conveyed his desire to "severely limit the amount of people that they're around" because his "dad is in the higher risk group." A day later, mother agreed to the arrangement and to "play it as it goes."

Over the summer, as the pandemic continued and it became clear that schools in Northern Virginia would not be returning to full-time in-person education, father proposed that "we'd 'move' here for the full school year" to keep giving their oldest son (who struggled with a minimal attention span and some speech concerns) the benefit of his grandmother's attention and care as well as a likely earlier return to full-time in-person education. Mother agreed to the plan based on their eldest son's "best interest as it related to schooling [because she did not] want him to be held back even more than he already had been with speech, advancement, etc.," and recognizing that "[c]learly he's progressed quickly there with your mom instructing him/them and [she has] noticed that."

In February 2021, father filed a petition to modify custody seeking physical custody of the minor children and revealing his intention to purchase a home in Chesterfield County and remain there permanently. He followed that with a formal notice of intent to relocate (as required by the martial settlement agreement) in March 2021. During this entire time, father continued to reside with his children at the home of his parents, while maintaining his same apartment in Northern Virginia. He remained employed through the same company based in Northern Virginia, but with the continued ability to work remotely.

A two-day trial on the petition to modify custody took place on May 17-18, 2021.[1] Father presented evidence that mother had only visited the children periodically during the time they were in Chesterfield County, yet had taken extensive international trips. He submitted into evidence a calendar of mother's travel created based on mother's deposition. Father's evidence showed that mother had travelled about fifty-one days over ten months. He also presented evidence that the children were doing well in school and had built close connections to their grandparents.

Father called mother as a hostile witness and presented (uncontested) evidence that after not having the children from March 13 to May 31, 2020, she had them for forty-two days over the span of the next nine months. Mother testified that she could not visit more often or have access to the children because father was concerned about exposing the children to COVID-19 or transmission to his elderly parents. She agreed that the children benefited from their grandmother's tutoring and obtained good progress reports from school in Chesterfield County.

At the end of father's presentation of evidence, mother moved to strike. The court looked to the two factors a court must find to upset an otherwise final custody order: (1) the existence of a material change in circumstances and (2) whether the custody modification was in the best interests of the children. *See Keel v. Keel*, 225 Va. 606, 612 (1982). The court found that "given the unusual facts of this case, [] I agree with mother's counsel, that as a matter of law, this is not a material change in circumstance." Instead, "[i]t's merely a temporary arrangement until the pandemic is over and was never intended by either party, looking at the evidence that [the court has] heard from the father thus far, never intended by either party to be a permanent arrangement or even a change in circumstances within the meaning of that phrase." The court then made an

_____

[1] We include here only the evidence relevant to the material change of circumstances analysis.

- 4 -

alternative finding that—even if there had been a material change—a custody modification and permanent relocation to Chesterfield County would not be in the best interests of the children.

Father filed this timely appeal, assigning error to the circuit court's decision on four grounds: first, by applying the incorrect legal standard, which requires all evidence to be considered in the light most favorable to the non-moving party; second, by finding that a temporary agreement to relocate could not create a *prima facie* material change in circumstances; third, by applying the incorrect standard for the best interests of the child analysis; and finally, by awarding attorney fees under the incorrect legal standard.

ANALYSIS

A final custody order cannot be modified unless (1) there has been a material change of circumstances since the prior decree, and (2) the change is in the best interests of the children. *Keel*, 225 Va. at 612. After father petitioned to change the custody order here, the court heard the evidence *ore tenus*.[2] "When a court hears evidence at an *ore tenus* hearing, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Wheeler v. Wheeler*, 42 Va. App. 282, 288 (2004) (internal quotation omitted). This appeal challenges the court's decision to grant mother's motion to strike. "When ruling on a motion to strike a plaintiff's evidence, a trial court is required to accept as true all evidence favorable to a plaintiff and any reasonable inferences that may be drawn from such evidence." *Volpe v. City of Lexington*, 281 Va. 630, 639 (2011). "On appeal, when this Court reviews a trial court's decision to strike a plaintiff's evidence, we likewise view the evidence in the light most favorable to the plaintiff." *Id.* "Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." *Ohlen v. Shively*, 16 Va. App. 419, 423 (1993) (citation omitted).

---

[2] *Ore tenus* simply means orally. *Ore Tenus*, *Black's Law Dictionary* (11th ed. 2019).

I.  The court used the correct legal standard in reviewing the motion to strike.

To begin with, father argues that the court applied the wrong legal standard to the motion to strike.  We agree with father that the correct standard requires a court to consider all of the evidence as true and in the light most favorable to the non-moving party.  *Barnes v. Barnes*, 64 Va. App. 22, 26 (2014).  But father procedurally defaulted any argument that the court failed to apply this standard by failing to make this argument below.  Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Failure to comply with this rule deprives this Court of "active jurisdiction" to consider an issue on appeal.  *See Cilwa v. Commonwealth*, 298 Va. 259, 266-67 (2019).

Mother properly raised this procedural bar in her brief.  *See Riddick v. Commonwealth*, 72 Va. App. 132, 143 (2020) ("Because active jurisdiction goes not to the power of the court but the exercise of its authority, the normal rules governing challenges to orders apply.").  And we agree that father failed to preserve this issue before the circuit court.  He neither objected to the standard applied by the court during the hearing, nor made this argument in his motion to reconsider.  Father also failed to identify any basis in his opening brief for *how* the court applied the incorrect standard, instead objecting to the court's ruling on the merits given father's assertion that he presented "sufficient evidence on the issues of a material change in circumstances."  Indeed, even at oral argument, father conceded that the court said it was applying the correct standard.  For these reasons, this assignment of error is waived.[3]

---

[3] Father presented no argument in his opening brief, or at oral argument, for why his procedural default should be excused by the "good cause" or "ends of justice" exceptions in Rule 5A:18.  And "we will not *sua sponte* raise them on his behalf."  *Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017).

## II. The court did not err in finding father failed to prove a material change in circumstances had occurred.

Father then alleges the court erred by finding a temporary agreement to relocate could not "create a *prima facie* material change in circumstances." The party seeking to change an otherwise final custody arrangement must show a material change in circumstances before a court can reconsider its prior order; otherwise, such reconsideration would be barred by principles of *res judicata*. *Sullivan v. Jones*, 42 Va. App. 794, 803 (2004) ("*Sullivan II*"). This bar for reconsideration protects judicial resources and promotes "stability and predictability [which] usually benefit the child." *Id.* at 806. Our Court has explained that "'[c]hanged circumstances' is a broad concept and incorporates a broad range of positive and negative developments in the lives of the children." *Parish v. Spaulding*, 26 Va. App. 566, 573 (1998), *aff'd*, 257 Va. 357 (1999). The requisite change of circumstances is "not limited to whether negative events have arisen at the home of the custodial parent" and "is broad enough to include changes involving the children themselves such as their maturity, their special educational needs, and any of a myriad of changes that might exist as to them." *Keel*, 225 Va. at 612. The standard is also "broad enough to include positive changes in the circumstances of the noncustodial parent such as remarriage and the creation of a stable home environment, increased ability to provide emotional and financial support for the children, and other such changes." *Id.*

While the standard is necessarily broad, it is a threshold that precedes a court's separate consideration of whether any change in a custodial arrangement is in the best interests of the children. As a result, the material change in circumstances must be something other than a mere demonstration that a new arrangement would be in the best interests of the children.

Father's primary argument is that the court erred by finding, as a matter of law, that an agreement to make a temporary change to a custody agreement could never constitute a material change in circumstances. We do not need to decide whether such a blanket rule would be

justified, because the record is clear that the court considered the temporary agreement along with the "unusual facts of this case" and "looking at the evidence [it had] heard from the father thus far." Of course, here, the evidence presented by father included the testimony of mother (called as an adverse witness), such that the court had before it all relevant evidence concerning whether a material change had occurred.[4] As the court explained, there was also "no evidence" that there "was any difficulty making" the prior joint physical custody agreement work. It was only in this broader context that the court concluded that the temporary agreement to relocate *in this case* did not constitute a material change in circumstances.[5]

Indeed, father's evidence was that—under the agreed temporary relocation and change to the physical custody allocation—the children had better lives in Chesterfield County. There was simply no evidence for why the temporary change *needed* to be permanent, or said another way, why the original shared custody arrangement in Northern Virginia (where there are at least adequate schools and childcare options) was inadequate. Instead, the court properly considered that father's proposed change would eviscerate the existing *joint* physical custody agreement. Father presented no evidence that he could not comply with the original agreement and return to Northern Virginia, where he retained an apartment and employment, only that he was uninterested in doing so. For this reason, father's reliance on *Sullivan II* and *Parish* falls short.

We find significant that in both *Sullivan II* and *Parish,* the primary caregiver parent with *full* physical custody moved to another state out of some necessity. Beginning with *Sullivan v.*

---

[4] Father's counsel conceded at argument that all relevant evidence was before the court by the close of father's case.

[5] While the court used the phrase "matter of law" in explaining that "I find as a matter of law that there has been no showing of a material change of circumstance," we do not read this turn of phrase in isolation. *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977) (appellate courts do "not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied").

*Knick*, 38 Va. App. 773, 782 (2002) ("*Sullivan I*"), the mother originally sought to relocate because she was "the parent in physical custody" of the child, "had become engaged, anticipated marriage within a month and planned to relocate with her husband to South Carolina." The trial court approved the relocation, finding that she had shown a material change in circumstances and that the move was in the best interests of the child. *Id.* On appeal, this Court agreed that there was a material change in circumstances but found that the best interests of the child did not warrant the move given the child's strong relationship to the father and reversed the trial court on that basis. *Id.* at 784-85.

But in the intervening time, relying on the lower court's order permitting the relocation, the mother moved to South Carolina with the child and repetitioned the court to approve the same relying on the fact that the child had now resettled in South Carolina for nearly a year and was doing well. *Sullivan II*, 42 Va. App. at 800-01. The trial court again held that the relocation was in the best interests of the child. *Id.* at 802. On appeal a second time, this Court agreed that the trial court had properly weighed the evidence presented by the mother, including the child's integration into the community in South Carolina, her continuing attachment to her mother who had always been her primary caretaker and now had more time to be involved in her life, the child's relationship with her half-siblings, and the overall "attractive environment in which she lives." *Id.* at 807-09. In other words, the positive effects from a relocation were relevant to the best interests of the child analysis, but not whether a material change had occurred.[6]

*Parish* is similarly inapposite. The mother, and primary caregiver, in that case made a motion to relocate to Indiana that the trial court denied on procedural grounds. *Parish*, 26 Va. App. at 570. She moved anyway, and then made another motion seeking after-the-fact

---

[6] This Court had already affirmed in *Sullivan I* that mother's remarriage alone, as the primary caregiver, was a material change.

approval of the relocation. *Id.* She had remarried, and her new husband lost his job in Virginia but found a job in Indiana. *Id.* at 574. She also presented evidence that her husband's extended family in Indiana would offer them assistance and rent-free housing. *Id.* This Court agreed with the trial court that a material change in circumstances had occurred and found no error with the court's retroactive approval of the relocation. *Id.* at 575.

Here, father was living in his parents' home temporarily, still maintaining his residence in Northern Virginia. There was no evidence of remarriage, or new sibling relationships to consider, and no need to relocate to provide for the children financially.[7] And no evidence that mother could not keep up her end of the joint custody bargain. Although mother travelled internationally and did not see the children as often while living two hours away, father's evidence presents no reason the existing joint custody arrangement would not work again if father returned to Northern Virginia. This is particularly so given father's (understandable) concerns about exposing the children, and his aging father, to COVID-19. Finally, the court reasoned that the restrictions related to COVID-19 were beginning to be lifted everywhere, removing any "necessity" of remaining in Chesterfield County.

We cannot say that the circuit court erred in its factual findings or conclusion that father failed to prove a material change in circumstances. On these facts, in the light most favorable to father, the parties' temporary agreement *alone* was insufficient to demonstrate a material change. We do not reach the question of whether a temporary agreement to change a custodial

_____

[7] *Cf. Scinaldi v. Scinaldi*, 2 Va. App. 571, 574 (1986) (holding that the mother's move to New York was in the children's best interests as she was about to lose her home and her job, without addressing whether there was a material change of circumstances); *Wheeler*, 42 Va. App. at 286 (finding that the mother's worsening economic condition, which made her unable to afford rent and forced her to rely on charity and gifts, was a change of circumstances); *Garner v. Ruckman*, No. 0344-11-4 (Va. Ct. App. Nov. 29, 2011) (finding that the mother's move with the child was a change of circumstances, considering that she moved to live with a relative after her income was reduced, the father failed to pay child support, she was facing eviction, and she had no reliable vehicle).

arrangement could *ever* constitute *prima facie* evidence of a material change in circumstances because the court's determination here was appropriately tied to the particular facts of this case.[8] Because we find no error with the court's conclusion on the material circumstances prong, we do not consider the court's alternative conclusion that relocation was not in the best interests of the children.

III. <u>The circuit court used the correct legal standard to award some attorney fees to mother.</u>

Finally, father argues that the circuit court applied the incorrect legal standard to award some attorney fees to mother because it ignored that father "had a *bona fide* belief that the relocation was in the best interests of the children." Father also argues that mother engaged in acts which boosted the costs of litigation, including hiring an expert witness who stated he had reviewed father's deposition when the transcripts were not yet available.

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." *D'Ambrosio v. D'Ambrosio*, 45 Va. App. 323, 344 (2005) (citing *Graves v. Graves*, 4 Va. App. 326, 333 (1987)). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985).

Nothing suggests the circuit court applied the incorrect legal standard here. The court explicitly stated, "[I]t's a matter of equity and justice, and I will consider the request in light of that standard and of course in light of whether the fees are reasonable. [Mother] doesn't automatically get $80,000 in fees just because [s]he's prevailing." The court reviewed attorney fee statements from both parties, considered the merits of each claim, the equities at hand, and

---

[8] While there are strong policy reasons to encourage parties to work together and make temporary changes to their custody arrangements when it is in the best interests of the children, without fear that the agreement will be used against them in the future, there are no doubt potential factual scenarios where an agreed temporary deviation from a custodial agreement could constitute a material change in circumstances.

the reasonableness of the fees. It awarded mother $37,000 in attorney fees, a little less than half of mother's overall fees. Finding no evidence that the court applied an incorrect standard, we affirm the award of attorney fees.

## CONCLUSION

We affirm the judgment below.

*Affirmed.*